**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elite Performance LLC, an Arizona limited liability company,<br><br>        Plaintiff,<br>v.<br><br>Echelon Property & Casualty Insurance Company, an Illinois corporation<br><br>        Defendant. | CV 20-00552-TUC-RM (LAB)<br><br>**ORDER** |

      Pending before the court is the plaintiff's motion to compel filed on January 13, 2022. (Doc. 38)  The defendant filed a response on January 27, 2022.  (Doc. 40)  The plaintiff filed a reply on February 3, 2022.  (Doc. 42)

      Also pending is the defendant's motion, filed on February 8, 2022, to strike portions of the plaintiff's reply brief, which was filed in support of its motion to compel.  (Doc. 43)  The plaintiff filed a response on February 9, 2022.  (Doc. 44)  The defendant filed a reply on February 11, 2022.  (Doc. 46)

      The court finds the motions suitable for determination without oral argument.  LRCiv 7.2(f)

Background

      In April of 2019, a small fire damaged property owned by the plaintiff, Elite Performance. (Doc. 1-3, p. 3) Elite contracted with AC/DC Corporation to fix the damage. *Id.*

AC/DC's work, however, was sub-par, and Elite subsequently filed suit against it (and its owner) in Maricopa County Superior Court alleging negligence. *Id.*, pp. 3-4  AC/DC was insured at the time by the defendant in this action, Echelon. *Id.*  AC/DC tendered the state court suit to Echelon for a defense, but, after some back and forth, Echelon ultimately refused coverage. *Id.*, p. 4  The letter informing Elite of that refusal was authored by attorney Elizabeth Fleming, who had been retained by Echelon. (Doc. 38, p. 2)  Elite and AC/DC subsequently stipulated to a judgment in favor of Elite in the amount of $475,000. *Id.*, pp. 5-6  In addition, AC/DC assigned to Elite the bad faith and contract claims it had against Echelon pursuant to *Damron v. Sledge*, 105 Ariz. 11, 460 P.2d 997 (1969).  *Id.*

Elite subsequently filed a bad faith and breach of contract action against Echelon in Pima County Superior Court. (Doc. 1-3, pp. 2-10)  On December 23, 2020, Echelon removed that action to this court alleging diversity jurisdiction. (Doc.1)

Pending Motions

When Elite filed its original lawsuit against AC/DC, AC/DC tendered a claim to its insurer, Echelon, for a defense. Elizabeth Fleming, from the Udall law firm, subsequently issued to AC/DC a denial of coverage letter on January 24, 2020. (Doc. 38, p. 2); (Doc. 38-1)  She wrote as follows: "Elite's claims as presently presented do not fall within the coverage of AC/DC's Policy." (Doc. 38-1, p. 6)  AC/DC therefore was forced to obtain counsel on its own. (Doc. 38, p. 2)

Later, however, on July 31, 2020, Fleming withdrew the coverage denial based on new evidence of "physical damage done to the electric panel which [Elite's counsel] claims qualifies as property damage for the purpose of coverage under this policy." (Doc. 38-2, p. 8)  She issued a "Reservation of Rights" and invited counsel, Robert M. Moore, to stay on assuming he would accept Echelon's panel billing rates. (Doc. 38-2, pp. 2-3)

Later still, on October 14, 2020, Fleming issued a "Disclaimer of Coverage" because the alleged damage to the electrical panel fell within a coverage exclusion. (Doc. 38-3, p. 8)  The

letter was addressed to Beth Fitch, who apparently represented AC/DC at that time. (Doc. 38-3, p. 2) In conclusion, Fleming wrote as follows: "As previously noted this is not a professional liability policy and, as such, it is not intended to apply to the conduct that Elite is generally alleging." *Id.*

In its pending motion to compel, Elite asserts that it is entitled to the "full and complete unredacted claim file of Echelon" and "the files of the Udall Law Firm and Elizabeth Fleming, including all communications with Udall Law Firm and payments made to Udall Law firm" pursuant to Fed.R.Civ.P. 37. (Doc. 38, p. 1)

On January 27, 2022, Echelon filed a response to the motion to compel arguing generally that discovery is precluded by the work-product privilege and the attorney-client privilege. (Doc. 40) On February 3, 2022, Elite filed a reply. (Doc. 42)

On February 8, 2022, Echelon filed its pending motion to strike. (Doc. 43) Echelon moves that this court strike "Section D" from Elite's reply brief, in which Elite argues that Echelon should produce all communications it had with attorney Beth Fitch, who represented AC/DC at some point. (Doc. 43) Elite filed a response and Echelon filed a reply. (Doc. 44); (Doc. 46)

<u>Discussion: Motion to Compel Disclosure of the Claim File</u>

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), "A party seeking discovery may move for an order compelling . . . production . . . if . . . a party fails to produce documents."

Elite argues first that the court should order Echelon to "produce the full and complete unredacted claim file of Echelon and certify same under oath." (Doc. 38, p. 1)  Elite explains that it requested "a full and complete copy of the entire claim file" in its Request for Production of Documents, No. 1.  (Doc. 38, p. 4)  Echelon subsequently disclosed its 556-page claim file but 229 pages were completely redacted.  *Id.*, pp. 4-5.  Echelon notified Elite that the redacted information was withheld pursuant to the work-product privilege and the attorney-client privilege. (Doc. 38, p. 6)  Elite filed the pending motion to compel pursuant to Rule 37 arguing that neither privilege applies.  The court considers the privileges in turn.

The work-product privilege is codified at Fed.R.Civ.P. 26(b)(3)(A) and reads in pertinent part as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Elite argues first that the work-product privilege does not apply to the redacted pages because these pages were "prepared as part of insurance claim investigations" and not "in anticipation of litigation." (Doc. 38, p. 5)  Specifically, Elite asserts that "[d]ocuments are not work product simply because litigation is in the air or there is a remote possibility of some future litigation." (Doc. 38, p. 6)  Here, however, there was something more than a "remote possibility."

On May 13, 2020, AC/DC's counsel, Robert M. Moore, "sent a letter to Echelon's counsel, demanding that Echelon provide a defense in the underlying suit and stating that, if it failed to do so, it would 'enter into a *Damron* Agreement[1] without further notice.'" (Doc. 40, p. 3); (Doc. 40-1, p. 4)  A similar letter, expressing similar demands, was sent to Echelon on

---

[1] "When a liability insurer refuses to defend its insured against a third party's tort claims, . . . the insured and the claimant may enter into a *Damron* agreement under which the insured stipulates to a judgment, assigns his rights against the insurer to the claimant, and receives in return a covenant from the claimant not to execute against the insured." *Quihuis v. State Farm Mut. Auto. Ins. Co.*, 235 Ariz. 536, 539, 334 P.3d 719, 722 (2014) (punctuation modified).

July 22, 2020 by Elite's counsel, Joel L. Herz. (Doc. 40, p. 3); (Doc. 40-2, p. 2) The court agrees with Echelon that by May 13, 2020, documents prepared by Echelon's attorneys, agents, or other representatives likely were "prepared in anticipation of litigation." *See* Fed.R.Civ.P. 26(b)(3)(A). Echelon, however, provides no evidence tending to show that documents prepared *prior* to May 13, 2020 were prepared in anticipation of litigation. The court therefore agrees with Elite in so far as it asserts that documents prepared prior to May 13, 2020 have not been shown to be work-product.

Elite further argues that documents in the claim file prepared by Echelon's counsel, Elizabeth Fleming, are not protected by the attorney-client privilege. In Arizona, the attorney-client privilege is codified at A.R.S. § 12-2234. *Centex Homes v. NGM Ins. Co.*, 2020 WL 5593759, at *1 (D. Ariz. 2020); *see also* Fed.R.Evid. 501. ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). "The attorney-client privilege only protects communications that are made to or by a lawyer for the purpose of securing or giving legal advice." *Id.* (punctuation modified). "Thus, not all communications to or by one's lawyer are privileged." *Id.* "Indeed, merely assigning an attorney to perform an ordinary insurance business function does not cloak with privilege matters that would otherwise be discoverable." *Id.* "Because the privilege impedes full and free discovery of the truth, the privilege is strictly construed." *Roehrs v. Minnesota Life Ins. Co.*, 228 F.R.D. 642, 645 (D. Ariz. 2005). "The party resisting production bears the burden of persuasion." *Id.* (punctuation modified).

Here, Elite maintains that Echelon's counsel, Elizabeth Fleming, acted as a normal claims adjuster and therefore her activities are not covered by the attorney-client privilege. *See* (Doc. 38, p. 8); *see, e.g., Nerdig v. Electric Insurance Company*, 2018 WL 5776523, *2 (D.Ariz. 2018) (Claim notes prepared by defense counsel were not protected by the attorney-client privilege because they did not contain legal advice.). Elite notes, for example, that she was the one who drafted the letters denying AC/DC's claim. (Doc. 38, p. 7) The first letter drafted by Fleming was dated January 24, 2020, approximately four months before the May 13, 2020 letter that first

put Echelon on notice that it might anticipate a lawsuit. It therefore appears that she was retained, at least initially, to perform the routine task of claims adjustment.

In response, Echelon asserts that Elite's characterization of Fleming's role in denying the claim "is wholly unsupported." (Doc. 40, p. 7) And the court agrees that Elite's evidence as to the role Fleming played in the claim adjudication is thin. Nevertheless, it is Echelon, not Elite, that is in the best position to produce evidence establishing the role Fleming played in the claims adjustment. Moreover, as the party resisting production, it is Echelon that has the burden of proving that the privilege applies. Echelon, however, provides no evidence to refute Elite's assertion that Fleming was "performing an ordinary business function" when she denied AC/DC's claim. It simply maintains that "Echelon, through a letter drafted by Fleming, its counsel, denied the claim." (Doc. 40, p. 7) It asserts without further elaboration that "Plaintiff already has deposed Echelon, and it already has explained how and why it denied the claim." *Id.* Echelon has not shown that Fleming's communications are covered by the attorney-client privilege. The court concludes that the attorney-client privilege does not apply to Fleming's communications in the claim file prior to May 13, 2020.

Elite argues in the alternative that none of Fleming's communications are privileged because Echelon has waived the attorney-client privilege citing *Ingram v. Great Am. Ins. Co.*, 112 F. Supp. 3d 934, 939-40 (D. Ariz. 2015). (Doc. 38, pp. 6-11) The court considers the issue in the interest of completeness.

In *Ingram*, the district court considered when a defendant insurer waives the attorney-client privilege by implication. That court noted as follows:

> Under Arizona law, an implied waiver of attorney-client privilege may be found, making otherwise privileged material discoverable, where the (1) assertion of the privilege was a result of some affirmative act, such as filing suit or raising an affirmative defense, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Raising an affirmative defense of good faith in response to a bad faith claim in itself is not sufficient to constitute an implied waiver of the attorney client privilege. *Rather, in order to impliedly waive the privilege, the party asserting the privilege must assert some claim or defense*

- 6 -

> *invoking the subjective reasonableness of its evaluation and that analysis must have incorporated information the litigant learned from counsel.*

*Ingram v. Great Am. Ins.* Co., 112 F. Supp. 3d 934, 937 (D. Ariz. 2015) (punctuation modified) (emphasis added).  In *Ingram*, the defendant insurance company argued that its conduct "was objectively and *subjective*ly reasonable and [its] decisions denying Plaintiffs' claims were made in good faith based on the investigation evaluation and recommendation by its third-party administrator as well as its own consideration of the facts and law." *Id.* (emphasis in original, punctuation modified).  The court therefore found that the defendant insurance company had impliedly waived the attorney-client privilege as to what legal advice the claims managers had when they acted in a way that the insurance company argued was subjectively reasonable.  After all, if the claims managers denied the claim in contradiction to counsel's advice, their actions were *not* subjectively reasonable.  In this case, however, Elite fails to present evidence showing that Echelon makes a similar assertion.

Elite maintains that "Echelon is claiming that its advice from its counsel justified its action." (Doc. 38, p. 8)  However, it does not provide evidence for this assertion.  Elite notes that in its response to interrogatories, Echelon stated that, "[U]pon further review and investigation, Echelon determined that its initial coverage position was correct." (Doc. 38, p. 10)  On the issue of investigation, Echelon's Rule 30(b)(6) designee stated in his deposition as follows: "The first documents that we ever were provided were the – were the filing of the complaint, so we started there." (Doc. 38, p. 10)  "That's where the investigation started." *Id.*  "And at that point, we reviewed the allegations and the denial was made." *Id.*  He was asked, "[W]hat did you do to determine whether the negligence claim was true or not?" (Doc. 38, p. 11)  And he responded, "We looked at the entirety of the claim and reviewed it, and then I spoke in consultation with – with counsel."  *Id.*  Elite has established by this evidence that Echelon received advice from counsel on certain legal issues.  That is, of course, the reason why businesses retain counsel.  Elite has not established, however, that Echelon is asserting that its actions were subjectively reasonable *because of* this advice.  Accordingly, the court finds that

- 7 -

1  Echelon has not impliedly waived the attorney-client privilege. *See, e.g., Figueroa v. Gannett*
2  *Co. Inc.*, 2021 WL 5239738, at *1 (D. Ariz. 2021) ("[I]t is well-established that a holder of the
3  privilege cannot claim that legal advice from his or her attorney justifies his or her action while
4  simultaneously shielding that advice from disclosure . . . But if the privilege holder merely
5  asserts that his conduct was lawful and makes no claim that he or she relied on counsel's advice,
6  privileged information is not necessarily placed in issue.").

7  Nevertheless, as the court explained above, claim file documents prior to May 13, 2020
8  are not protected by work-product or attorney-client privilege.  These documents must be
9  disclosed.

10  Elite asserts that Echelon should certify under oath that it has made a proper disclosure.
11  It provides no argument, however, as to why this requirement should be imposed.  Absent any
12  supporting argument, the request will be denied.

14  Discussion: Motion to Compel Files from the Udall Law Firm and Elizabeth Fleming
15  Elite further argues that the court should order production of "the files of the Udall Law
16  firm and Elizabeth Fleming, including all communications with Udall Law Firm and payments
17  made to Udall Law Firm." (Doc. 38, p. 1)  Earlier in the case, Elite propounded Interrogatory
18  No. 9, which instructed as follows: "Identify all Communications with Udall Law Firm, L.L.P."
19  (Doc. 38, p. 12)  Interrogatory No. 10 stated: "Identify all payments made to Udall Law Firm,
20  L.L.P." *Id.*  Echelon responded that the interrogatories seek information that is protected by the
21  work-product privilege or the attorney-client privilege, among other things.

22  In its pending motion, Elite argues that Fleming's file at her law firm, Udall Law Firm,
23  is not subject to the work-product privilege or the attorney-client privilege for the reasons
24  discussed previously.  As the court stated above, Echelon has not shown that documents created
25  prior to May 13, 2020 constitute work product.  The court disagrees, however, with Elite's
26  arguments that these documents are not protected by the attorney-client privilege.

Elite argues, as it did before, that Fleming acted as a claims adjuster and therefore the attorney-client privilege does not shield her work from discovery. Her work as a claims adjuster, however, would have been transferred to Echelon's claim file. We are considering here those documents that remained in her file at the Udall Law Firm. Elite provides no argument to counter Echelon's assertion that those documents are covered by the attorney-client privilege.

The court will not order Echelon to produce the files of the Udall Law Firm and Elizabeth Fleming.

Discussion: Motion to Strike

Also pending before the court is Echelon's motion, filed on February 8, 2022, to strike portions of the plaintiff's reply brief, which was filed in support of its pending motion to compel. (Doc. 43) Specifically, the defendant, Echelon, moves that this court strike or disregard "Section D" from the plaintiff's reply brief, in which Elite argues that the court should order Echelon to produce all communications with Beth Fitch, who was retained by Echelon at some point for the benefit of AC/DC, "along with all bills related to the defense of the insured." (Doc. 43, pp. 1-2) Echelon assets that it is not appropriate to introduce a new issue in a reply brief because the non-movant does not have an opportunity to brief the issue. (Doc. 43, p. 2) Moreover, this issue was never the subject of any prior "meet and confer" as required by LRCiv. 7.2(j). *Id.*

In its response, Elite maintains that it asked for this information in its Request for Production of Documents No. 2 and Echelon has never explained why this information is not in its claim file. (Doc. 42) Elite does not explain why it could not have raised this issue in its opening brief. It does not contradict Echelon's assertion that this issue was never the subject of any prior "meet and confer" as required by LRCiv 7.2(j).

Echelon's arguments are well taken. The motion will be granted in part. The court will disregard the arguments presented in "Section D" of Elite's reply brief.

IT IS ORDERED that the plaintiff's pending motion to compel, filed on January 13, 2022, is GRANTED in PART. (Doc. 38) Echelon must disclose, within 15 days of service of this order, that part of the claim file dating prior to May 13, 2020. The discovery deadline will be extended to provide for this particular discovery disclosure.

IT IS FURTHER ORDERED that defendant's pending motion, filed on February 8, 2022, to strike portions of the plaintiff's reply brief is GRANTED in PART. (Doc. 43) The court does not consider "Section D" from the plaintiff's reply brief, which was filed in support of its motion to compel.

DATED this 11th day of August, 2022.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge