**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elite Performance LLC, an Arizona limited liability company, | CV-20-00552-TUC-RM (LAB) |
| Plaintiff, | |
| v. | **ORDER** |
| Echelon Property & Casualty Insurance Company, an Illinois corporation, | |
| Defendant. | |

      Pending before the court is the defendant's motion to compel filed on January 28, 2022. (Doc. 41) The plaintiff filed a response on February 11, 2022. (Doc. 45) The defendant filed a reply on February 16, 2022. (Doc. 47)

      The court finds this motion suitable for determination without oral argument. LRCiv 7.2(f).

Background

      This suit arises out of an underlying action brought by the plaintiff, Elite Performance, against the defendant's insured, AC/DC. Following a small fire at Elite's commercial property, Elite hired AC/DC to make repairs. (Doc. 1-3, p. 2) These repairs were apparently unsatisfactory, and Elite sued AC/DC in Maricopa County Superior Court for negligence. *Id.* at pp. 2-3. The defendant in this action, Echelon, issued an insurance policy to AC/DC, which was in effect at the time of the repairs. *Id.* at 2. AC/DC tendered

the suit to Echelon for a defense. *Id.* at 3. Echelon ultimately determined that the claims were not covered and refused to defend or indemnify AC/DC. *Id.* Elite and AC/DC subsequently entered into a "*Damron* Agreement," whereby AC/DC assigned to Elite all claims it had against Echelon for denial of coverage. *Id.* at 4-5.

Elite now brings claims against Echelon for breach of contract and breach of the duty of good faith. (Doc. 1-3)

Pending Motion to Compel

In the underlying action, AC/DC sought a defense from Echelon under its general liability insurance policy. (Doc. 41, p. 2) After some back and forth, Echelon issued a coverage position letter stating that there was no coverage for the claims asserted against AC/DC. *Id.* AC/DC, left to defend itself, entered into a *Damron* Agreement with Elite, assigning to Elite any and all claims it might have against Echelon for failure to defend or indemnify AC/DC. *Id.*

Meanwhile, Elite also submitted a claim for damage to its own insurer. (Doc. 47, p. 2) Echelon asserts that Elite admits to "receiv[ing] payments from that carrier as part of this underlying claim." *Id.* However, it is not clear that Elite has specifically admitted to the existence of these payments. (Doc. 45)

On December 1, 2021, Echelon served Elite with discovery requests, including Request for Production No. 4: "Please produce any and all documents relating to any claim made to any other insurance carrier . . . related to the fire at the Property . . . ." (Doc. 41-1, pp. 5-6) The discovery requests also included Non-Uniform Interrogatories Nos. 1 and 2, which ask Elite to identify the name and contact information for Elite's property insurance agent and insurance company. (*Id.* at 13-14) Elite objected to these requests, claiming that they were not relevant, not proportional, and were barred by the collateral source rule. Echelon claims that defense counsel in the underlying suit attempted to obtain this same information, but Plaintiff objected to it in that suit as well. (Doc. 47, p. 3 n.2)

Discovery for this case officially closed on January 28, 2022. (Doc. 26, p. 2)

Echelon now seeks to compel Elite to provide responses to the above discovery requests. (Doc. 41, p. 1) Echelon also requests leave to issue a subpoena to Plaintiff's insurance agent and/or property insurance company, or alternatively, an Order re-opening discovery. *Id.* at 8.

Discussion: Relevance of Discovery Requests

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Echelon argues that the information and documents relating to Elite's property insurance claim "are plainly relevant to this case." (Doc. 41, p. 4) The information contained in the insurance company's file is unknown, but it may include documents pertaining to an investigation of the fire, photographs of the property, estimates of the damage, documents regarding payment of the claim, and whether there was an assignment of rights or claims related to the underlying incident. *Id.* Elite argues that this evidence is "not remotely relevant" to Elite's claims against Echelon and that Echelon is attempting to relitigate the underlying the case. (Doc. 45, pp. 1-2) However, whether evidence was relevant to the underlying case does not necessarily affect its relevance to the current case.

The disclosure sought by Echelon could produce evidence that points to fraud or collusion, a valid defense to a *Damron* Agreement. *See State Farm Mut. Auto. Ins. Co. v. Paynter*, 122 Ariz. 198, 201, 593 P.2d 948, 951 (Ct. App. 1979) ("In the absence of fraud or collusion, [an insurer] is not entitled to relitigate the merits of the claim.") For instance, if Elite made inconsistent claims to its insurer regarding damage to the property, then that could be relevant to a defense of fraud or collusion. Similarly, photographs and investigation of the damages might shed light on the extent and nature of property damage,

which could be relevant to the issue of insurance coverage. Lastly, if Elite assigned its rights and claims against AC/DC to its property insurer, then that too could be relevant. Thus, the court is persuaded that Echelon's discovery requests are sufficiently relevant to this case. Echelon further argues that disclosure is not permitted under the collateral source rule.

Discussion: Collateral Source Rule

"The collateral source rule is a doctrine, usually applied in personal injury cases, which provides 'that benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages.'" *John Munic Enters. v. Laos*, 235 Ariz. 12, 17, 326 P.3d 279, 284 (Ct. App. 2014) (citing Dan B. Dobbs, *Dobbs Law of Remedies* § 3.8(1) (2d ed. 1993)). In effect, this "excludes at trial evidence of any benefits received by the injured party from sources other than the tortfeasor and prohibits any reduction of damages recovered because of such benefits." *Eastin v. Broomfield*, 116 Ariz. 576, 583, 570 P.2d 744, 751 (1977). The rule allows for full recovery "from a defendant for an injury even when the plaintiff has recovered from a source other than the defendant for the same injury." *Lopez v. Safeway Stores, Inc.*, 212 Ariz. 198, 202-03, 129 P.3d 487, 491-92 (Ct. App. 2006).

Here, the collateral source rule does not apply because the damages alleged in this case are wholly separate from the damages for which Elite's insurer would have paid. In the underlying *Damron* Agreement, AC/DC assigned to Elite its potential claims against Echelon for failure to defend or indemnify AC/DC. Elite, now standing in AC/DC's shoes, subsequently brought breach of contract and bad faith claims against Echelon. By contrast, Elite's claims to its insurer would likely have been for property damage, not breach of contract or bad faith claims. The collateral source rule allows a plaintiff to recover fully from a tortfeasor even if he has already been compensated for the same injury, but Elite's insurer did not compensate Elite for the same injury that Elite now alleges against Echelon. Therefore, the collateral source rule does not apply.

Furthermore, the collateral source rule operates to exclude evidence at trial, not to limit pre-trial discovery. Elite argues that the discovery requests are improper because the evidence would be barred by the collateral source rule at trial. (Doc. 45, p. 2) Echelon argues that, for discovery purposes, the evidence need not necessarily be admissible at trial. (Doc. 47, p. 4) The court agrees with Echelon. Elite is welcome to challenge the admissibility of this evidence once the discovery phase is concluded, but it may not simply refuse to cooperate with a discovery request on the grounds that the evidence may eventually be deemed inadmissible.

The court will order Elite to provide the documents requested in Request for Production No. 4 and provide responses to Interrogatories Nos. 1 and 2. Elite asserts that it has done a search and that, "other than with regard to payment issues," it has no responsive documents. (Doc. 45, p. 4) Assuming this is still the case, Elite's duty to comply with this request for documents is discharged.

IT IS ORDERED that Defendant's motion to compel, filed on January 28, 2022, is GRANTED. (Doc. 41) Within 15 days of service of this order, Elite must (1) produce all documents related to the claim made by Plaintiff under its own property insurance policy, including correspondence, payments and/or any documentation related to that insurance carrier's own investigation; (2) disclose the name and address of Plaintiff's insurance agent; and (3) disclose the name of the insurance company that issued Plaintiff's property insurance policy.

IT IS FURTHER ORDERED that the discovery deadline will be extended to allow enough time for Defendant to issue subpoenas and receive responses from the insurer.

Dated this 11th day of August, 2022.

_____
Leslie A. Bowman
United States Magistrate Judge